**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KIMBERLY N. [1] | : | Docket No. 3:21-cv-00186 |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI[2], | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY | : | |
| *Defendant*. | : | JUNE 27, 2023 |

## RULING ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This is an administrative appeal following the denial of an application for Title XVI supplemental security income benefits ("SSI") by Kimberly N. ("Plaintiff"). The appeal is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This matter is before the court upon Plaintiff's Motion to Reverse the Decision of the Commissioner[3] ("Motion to Reverse"), *see* ECF No. 16, as well as Defendant's responsive Motion to Affirm the Decision of the Commissioner ("Motion to Affirm"), *see* ECF No. 21 (together with the Motion to Reverse, "Motions"). The court thoroughly has reviewed the Motions, the administrative record, *see* ECF No. 12, and the record in this matter, and **AFFIRMS** the decision of the Administrative Law Judge ("ALJ") for the reasons discussed herein.

---

[1] Pursuant to this district's standing order on social security cases, the court will identify Plaintiff and any other non-government party solely by first name and last initial. *See* Standing Order, District of Connecticut (January 8, 2021), available at https://www.ctd.uscourts.gov/sites/default/files/adminOrdersOCR/21-1_Standing%20Order%20Re%20Social%20Security%20Cases_6.pdf (last visited Jun. 26, 2023).

[2] On July 9, 2021, Kilolo Kijakazi became the acting commissioner of the Social Security Administration. At the Commissioner's request, and pursuant to Fed. R. Civ. P. 25(d), the court has substituted the acting commissioner for Andrew Saul in this case. The clerk hereby is instructed to alter the docket to reflect that the defendant is "Kilolo Kijakazi, Acting Commissioner of Social Security."

[3] All references to the "Commissioner" in this order shall refer to the Commissioner of Social Security.

1

The issues presented are (1) whether the ALJ erred in evaluating the medical opinion evidence; and (2) whether the ALJ's residual functional capacity assessment considered the effect of all medically-determinable impairments and is supported by the substantial evidence. For the following reasons, Plaintiff's motion for an order reversing or remanding the ALJ's decision hereby is denied, and the Commissioner's motion for an order affirming that decision is granted.

## I.  LEGAL PRINCIPLES

The Commissioner employs a five-step analysis when determining whether an individual is entitled to disability insurance pursuant to the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520. At step one, the Commissioner evaluates whether the applicant is engaged in "substantial gainful activity," and if they are so engaged, the application is denied. *Bowen*, 482 U.S. at 140. If they are not so engaged, then the Commissioner proceeds to step two and determines whether the applicant has a medically severe impairment or combination of impairments. *Id.* at 140–41. Without them, the application is denied. *Id.* With severe impairment, the Commissioner proceeds to the third step, at which the Commissioner consults a list of impairments that are presumptively disabling, *see* App. 1 to 20 CFR Part 404 Subpart P (the "Listings"), and if the applicant's impairment matches a condition in the Listings, their application is granted. *Bowen*, 482 U.S. at 140–41. If the impairment is not in the Listings, the Commissioner proceeds to the fourth step, and determines whether the applicant's impairment or combination of impairments prevents them from performing work they have performed in the past. If the applicant is capable of performing past work, then the

2

application is denied. *Id.* If the applicant is incapable of performing past work, the Commissioner proceeds to the fifth and final step to determine whether there is any other work available in the national economy that the applicant could perform, given their impairment, age, education, and work experience. *Id.* at 142. If other such work exists, then the application is denied; if not, then the application is granted. *Id.*

District courts may set aside a disability determination only if it is "based upon legal error or is not supported by substantial evidence." *Moreau v. Berryhill*, No. 17-cv-396 (JCH), 2018 WL 1316197, at *3 (D. Conn. Mar. 14, 2018) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)). "Substantial evidence" means more than a scintilla of evidence, but it is a very deferential standard of review. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012). The standard is satisfied by "such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.;* (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)) (emphasis in original); *see also Johnson v. Berryhill*, No. 3:17-CV-1651 (VAB), 2019 WL 1430242, at *5 (D. Conn. Mar. 29, 2019).

In reviewing a disability determination, courts must examine the entire administrative record and "consider the evidence which fairly detracts from the administrative finding as well as that which supports it." *Covo v. Gardner*, 314 F. Supp. 894, 899 (S.D.N.Y. 1970); *see also Snell v. Apfel,* 177 F.3d 128, 132 (2d Cir. 1999) ("To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.").

If the court finds that the Commissioner has applied an incorrect legal standard, or if there are significant gaps in the administrative record, the court may remand for further review by the Commissioner. *See Lepak ex rel. Lepak v. Barnhart*, 206 F. Supp. 2d 389, 392 (W.D.N.Y. 2002) (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)).  But if the record contains persuasive proof of disability, the court may reverse the Commissioner's decision and remand only for the calculation and payment of benefits.  *Id.* Otherwise, the stringent burden, which is "even more [deferential] than the 'clearly erroneous' standard [of review]" demands that the Commissioner's decision be affirmed.  *See Brault*, 683 F.3d at 448 (quoting *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

## II. BACKGROUND

Plaintiff is a 45-year-old woman.  Social Security Tr. at 39, ECF No. 12.[4]  She applied for disability insurance pursuant to the Social Security Act on April 4, 2017, asserting that (due to HIV, bipolar disorder, anxiety, and PTSD) she had been disabled since October 1, 2007.  *Id.* at 210, 395.  Plaintiff last worked in 2007 as a full-time administrative assistant at a law firm.  *Id.* at 41.  On October 25, 2017, a disability adjudicator in the Social Security Administration ("SSA") denied Plaintiff's initial request for SSI benefits and thereafter denied her request upon reconsideration.  *Id.* at 164.

On February 1, 2019, Plaintiff appeared with counsel for a hearing before an ALJ, *id.* at 33; benefits were denied on February 20, 2019, *id.* at 186–95.  On April 29, 2020,

---

[4] Citations to the administrative record (ECF No. 12) will refer to the record pagination (Social Security Transcripts), and not the pagination assigned by the electronic case filing system (CM/ECF) in the document's header.

the appeals council granted Plaintiff's request for review of the ALJ's decision and issued a remand order for further proceedings. *Id.* at 205–06, 287. On July 21, 2020, Plaintiff appeared for a second hearing before an ALJ. *Id.* at 75. On July 31, 2020, the ALJ issued a second decision denying benefits. *Id.* at 10–19. This appeal followed.

### III.   ALJ DECISION

Favorable to Plaintiff's application, the ALJ found that Plaintiff was not engaged in "substantial gainful activity" at step one. *Id.* at 12. The ALJ noted that Plaintiff "worked after the application date but this work activity did not rise to the level of substantial gainful activity." *Id.* At step two, the ALJ determined that the plaintiff had the severe impairments of bilateral carpal tunnel syndrome, peripheral neuropathy, obesity, bipolar disorder, and borderline personality disorder.[5] *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id.* at 13. In making this determination, the ALJ considered listings 1.02 (major disfunction of a joint), 1.04A (disorders of the spine), 11.14 (peripheral neuropathy), 12.04 (depression, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). *Id.*

---

[5] The ALJ noted that the plaintiff was HIV positive but found "this impairment to be non-severe as it is well-controlled with medication and there is no evidence of secondary disease process as a result of the claimant's HIV positive status." Tr. 12.

Next, the ALJ found that the plaintiff had the residual functional capacity to perform light work with limitations.[6]  *Id.* at 14.  At step four, based on the vocational expert's testimony, the ALJ found that Plaintiff would be unable to perform her past relevant work as a receptionist as it was actually or generally performed.  *Id.* at 17.

At step five, the ALJ found that, given Plaintiff's age education, work experience, and residual functional capacity, there are jobs that "exist in significant numbers in the national economy that [she] can perform."  *Id.*  Based on the testimony of a vocational expert, the ALJ found that Plaintiff could perform the light exertional level jobs of price marker, mail sorter, and electronics sub assembler.  *Id.* at 18.  The ALJ concluded that Plaintiff had not been under a disability from April 4, 2017, through July 31, 2020, the date of the ALJ's decision.

## IV.   DISCUSSION

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. §§ 423(a)(1) and 1381a.[7]  To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his

---

[6] The ALJ found that the plaintiff could perform light work except that she can never use her lower extremities to operate foot controls or climb ladders, ropes, or scaffolds. She can occasionally climb stairs and ramps, balance, stoop, and crouch. She can never kneel or crawl. She cannot engage in overhead reaching or work in exposure to cold. She can perform simple routine repetitive tasks; can sustain concentration, persistence, and pace for 2-hour segments; and can have brief and superficial interaction with workers and the public. She requires work with little to no changes in duties and/or routines.  The claimant cannot perform work requiring independent judgment
(no setting duties/schedules for others, no responsibility for the safety of others).

[7] "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1); *see also* 42 U.S.C. § 1382c(a)(3)(A).

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

    A.    <u>Medical Opinion Evidence</u>

Plaintiff first argues that the ALJ erred in finding as unpersuasive the medical opinion evidence from Dr. Keith Lepp ("Dr. Lepp") and Michelle Krepak LCSW ("therapist Krepak"). *See* Mot. to Reverse at 10, ECF No. 16-1. The Commissioner responds that the ALJ appropriately considered all medical opinion evidence, pursuant to the new regulations for the evaluation of medical evidence. Motion to Affirm at 4, ECF No. 21-1.

In considering and articulating medical opinions, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ considers the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[8] 4) specialization; and 5) other factors. *Id.* at § 416.920c(c)(1)–(5). Supportability and consistency are the most important factors in evaluating medical opinion persuasiveness. *Id.* at § 416.920c(a). Supportability refers to its support from relevant objective medical evidence and any supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency refers to its consistency with evidence from other medical and non-medical sources. 20 C.F.R. § 416.920c(c)(2). While the ALJ's decision should explain how the two most important factors were considered, the ALJ is not required to articulate how the other factors were considered. 20 C.F.R. § 416.920c(b)(2).

---

[8] In considering this factor, the ALJ considers the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship, as further defined in the regulation. 20 C.F.R. § 416.920c(c)(3)(i)-(v).

7

In this case, the ALJ considered a number of medical opinions (and prior administrative medical findings) and evaluated their supportability and consistency.[9] Plaintiff contends that it was error for the ALJ to find as persuasive a medical opinion that was unfavorable to her claim while finding a later-issued favorable opinion by the same medical provider to be unpersuasive.  Specifically, Plaintiff points to the medical opinion evidence of Dr. Lepp.

In March 2018, Dr. Lepp and therapist Krepak issued a report assessing Plaintiff's mental health and functional capabilities.  Tr. 2704–08 [hereinafter the "March 2018 Report"].  The March 2018 Report indicates that Plaintiff was seen once weekly by therapist Krepak and once monthly by Dr. Lepp from July 17, 2017, to February 26, 2018. *Id.* at 2704.  The diagnoses include bipolar mood disorder, PTSD, alcohol dependence full remission, cocaine dependence full remission, and heroin dependence sustained remission.  *Id.*  Dr. Lepp and therapist Krepak note that Plaintiff has a logical thought process, is coherent, and has appropriate perceptions and normal concentration, and that she is able to follow directions, ignore stimuli, and stick to the task.  *Id.*  However, she "is anxious and can present with elevated mood." *Id.*  They then note that Plaintiff sometimes has a problem or "a reduced ability" to use appropriate copings skills, to appropriately

---

[9] The ALJ found a number of medical opinions to be unpersuasive.  Tr. at 16–17. Specifically, the ALJ found as unpersuasive an opinion from Dr. Jeffrey Cohen that did not provide any insight into Plaintiff's functional limitations or her ability to focus, concentrate, or interact with others.  *Id.* at 16.  For similar reasons, the ALJ also found as unpersuasive the opinion of Dr. Richard Slutsky, which also failed to provide any real functional limitations, and was not supported by the record.  *Id.*  The ALJ found the opinions of the state agency Disability Determination Services to be partially persuasive as the finding for "Medium Work" did not account for Plaintiff's carpal tunnel diagnosis, but that Plaintiff can communicate effectively in work environments and has some social interaction limitations.  *Id.* at 17. Upon review of the record, the court concludes that the ALJ properly applied 20 C.F.R. § 416.920c(a) in evaluating the persuasiveness of these opinions and the ALJ's decision is supported by substantial evidence.  Moreover, Plaintiff does not point to any error with respect to the ALJ's findings on any of these medical opinions.

8

handle frustration, to appropriately interact with others, to ask questions or request assistance, and to appropriately respect/respond to others in authority. *Id.* at 2706–08. The remainder of the report indicates that Plaintiff has an average ability for nearly all other listed activities of daily living, social interactions, and task performances.[10]  *Id.* There are no functional areas where the providers find that Plaintiff has a frequent problem or limited ability to function. *Id.*

In contrast to his March 2018 Report, Dr. Lepp completed a medical opinion questionnaire on December 4, 2018, in which he indicates that Plaintiff has a reduced ability to perform work or to sustain an ordinary routine. *See id.* at 2792–94 [hereinafter the "December 2018 Report"]. In particular, Dr. Lepp gives Plaintiff an ability rating of "Poor or None," indicating that she has "no useful ability" (1) to complete a normal workday or workweek without interruptions from psychological based symptoms; (2) to accept instructions and respond appropriately to criticism from supervisors; (3) to understand, remember, and carry out detailed instructions; and (4) to set realistic goals or make plans independently of others. *Id.* In the remainder of the twenty-five ability areas, Dr. Lepp gives Plaintiff a rating of "Fair," indicating that her mental ability and aptitude is "seriously limited but not precluded." There were no functional areas where Dr. Lepp found that Plaintiff's abilities are "Good" (i.e., "limited but satisfactory") or "Very Good" (i.e., "satisfactory or more"). *Id.*

The ALJ's decision indicates the following with respect to the March 2018 Report and the December 2018 Report:

---

[10] The providers found that Plaintiff has an "excellent ability" taking care of personal hygiene and caring for her physical needs (e.g., dressing and eating).  Tr. 2706.

9

> The opinion of Michelle Krepak, LCSW and Keith Lepp, M.D. of Family Centers, Inc. dated March 2018 is found to be persuasive. This assessment has the support of the claimant's treatment history and mental status findings. The undersigned accepts that the claimant has some reduced coping skills and limits interacting with others. The undersigned also accepts that she has average ability to get along with others without distracting them or exhibiting behavioral extremes. Also, the undersigned accepts that she has average ability to perform simple tasks and sustain focus to complete such tasks. These assessments have all been incorporated into the residual functional capacity.
>
> Dr. Lepp submitted another medical source opined dated December 4, 2018. Indications for reduced ability to perform work or sustain an ordinary routine conflict with content of the treatment notes, from the same facility, that claimant had improvement with treatment. Also inconsistent with claimant's subsequent work activity and job search. Accordingly, the undersigned finds that this report from Dr. Lepp is not persuasive.

*Id.* at 16–17 (internal citations omitted).  The court must determine whether there is substantial evidence to support the ALJ's finding that the December 2018 Report is unpersuasive because it is inconsistent with Plaintiff's treatment notes and subsequent work activity.  After Dr. Lepp issued his opinion on December 4, Plaintiff returned to Family Centers Inc. for a "subsequent psychiatric session" on December 28, 2018.  *Id.* at 2796.  Dr. Lepp's note from that session indicates that Plaintiff's judgment is "fair" while her thought processes are "spontaneous" and "impoverished."  *Id.* at 2797.  In another treatment note dated January 4, 2019, Dr. Lepp indicates that Plaintiff has "Continued- Has made progress" with respect to her impulse control disorder.  *Id.* at 2803.  Specifically, Plaintiff "reduced her impulsivity by 40% since last treatment period."  *Id.*  Plaintiff notes, "Five months after Dr. Lepp's December 2018 opinion, [Plaintiff] was admitted to psychiatric inpatient with hallucinations and suicidal/self-harm ideation."  Mot. to Reverse 12, ECF No. 16-1.  A review of the record confirms that Plaintiff was admitted to Stamford Hospital in May 2019 and June 2019 for suicidal ideation.  *Id.* at 3066, 3186.  While Plaintiff's hospitalizations demonstrate that her mental health had declined (or continued to decline) after Dr. Lepp issued his opinion in the December 2018 Report, the

hospitalizations do not themselves corroborate Dr. Lepp's opinion that Plaintiff has no ability to complete a normal workday, accept instructions, or understand, remember, and carry out detailed instructions. To the contrary, the records from Stamford Hospital indicate that throughout her May 2019 hospitalization, Plaintiff demonstrated "[r]elevant/logical" thought processes that, at times, were "[g]oal directed," with "[a]dequate abstract ability," fair insight, and social judgment that improved from "mildly impaired" to "[a]dequate." *Id.* at 3036; 3041; 3047; 3056; 3060; 3064; 3066. Records from Plaintiff's June 2019 hospitalization similarly indicate that upon her discharge, Plaintiff had "[n]ormal" thought processes with fair insight and judgment. *Id.* at 3188. Treatment notes from October 2019 describe Plaintiff as having "[l]inear and logical" thought processes, with fair attention and concentration, and fair judgment. *Id.* at 3507–08. Finally, the record indicates that Plaintiff worked in 2019 after her hospitalizations. *Id.* at 366, 3506. The December 2018 Report is not corroborated by Plaintiff's hospitalizations given the subsequent evidence in the record.

The court concludes that the ALJ properly considered the medical opinions and prior administrative medical findings, and evaluated the persuasiveness of the opinions based on the evidence of record. The court further concludes that the ALJ's decision is supported by substantial evidence. Therefore, the court denies Plaintiff's motion to reverse on this basis.[11]

---

[11] Plaintiff's brief also suggests that the ALJ did not follow the prior remand order regarding Dr. Lepp's opinion. Mot. to Reverse 11, ECF No. 16-1. The court disagrees. The appeals council remanded the case to the ALJ to review Dr. Lepp's December 2018 Report because "[t]his opinion was not evaluated in the decision" even though the ALJ "did find an earlier opinion from Dr. Lepp 'persuasive.'" Tr. 205. On remand, the ALJ evaluated the December 2018 Report, and found it unpersuasive. *Id.* at 17. Since on remand the ALJ did, in fact, evaluate Dr. Lepp's December opinion, the court concludes the ALJ's decision does not warrant remand for failure to follow the appeals council's order.

B.     Residual Functional Capacity Assessment

Plaintiff next argues that the ALJ "left out relevant factors from his RFC description" because he did not account for her hand use limitations or her off task behaviors including her absenteeism and insubordination. Mot. to Reverse 15, ECF No. 16-1. The Commissioner responds that "the ALJ properly included only those limitations he found supported by and consistent with the evidence." Mot. to Affirm 8, ECF No. 21-1.

Residual functional capacity ("RFC") refers to "what an individual can still do despite his or her limitations." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) [hereinafter "SSR 96-89]). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* RFC is "an assessment based upon all of the relevant evidence . . . [that evaluates a claimant's] ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions." 20 C.F.R. § 220.120(a). An ALJ must consider both a claimant's severe and non-severe impairments in determining a claimant's RFC. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2); *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984).

The ALJ formulated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant can never use her lower extremities to operate foot controls. The claimant can never climb ladders, ropes or scaffolds. The claimant can occasionally climb stairs and ramps. The claimant can occasionally balance, stoop, and crouch. She can never kneel or crawl. The

claimant cannot engage in overhead reaching. The claimant cannot work in exposure to cold. The claimant can perform simple routine repetitive tasks. The claimant can sustain concentration, persistence and pace for 2-hour segments. She can have brief and superficial interaction with workers and the public. The claimant requires work with little to no changes in duties and/or routines. The claimant cannot perform work requiring independent judgment (no setting duties/schedules for others, no responsibility for the safety of others).

Tr. 14.

1.   *Hand Use Limitations*

Plaintiff argues that the RFC fails to account for her "diagnosis of carpal tunnel syndrome bilaterally and peripheral neuropathy."  Mot. to Reverse 15, ECF No. 16-1. Specifically, she argues that the RFC does not mention limitations caused by related symptoms, such as numbness and tingling in her hands.  *Id.*   She points to the opinion of Dr. Richard M. Slutsky. M.D. ("Dr. Slutsky") who conducted her disability evaluation on October 18, 2017.  *See id.* at 2336–39.  Dr. Slutsky's opinion notes that Plaintiff has "frequent numbness and tingling in [her] fingers of both hands" that "particularly bothers her when she holds her arms upright, leans on her elbows, or does repetitive tasks."  *Id.* at 2337.  However, these symptoms are based on Plaintiff's subjective complaints rather than on examination.  "The Secretary is not obliged to accept without question the credibility of [a claimant's] subjective evidence."  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  Instead, an "ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Id.*

In his decision, the ALJ cites medical evidence from December 2016 through March 2020 noting normal physical examination findings, including: pain of 0/10, a normal musculoskeletal system, and movement of all four extremities with normal range of motion, strength, and tone.  Tr. 15.  In assessing Plaintiff's carpal tunnel and

neuropathies, the ALJ concluded that "[t]he notations for normal strength and range of motion militate against [her] allegations" and "none of the medical records details any loss of muscle strength . . . ." *Id.*  In addition, the ALJ included a limitation that Plaintiff cannot engage in overhead reaching, which accounts for Plaintiff's complaint that her tingling and numbness "particularly bothers her when she holds her hands up right."[12]

Moreover, Dr. Slutsky notes in his evaluation that Plaintiff had excellent motor grip strength of 5/5.  Upon sensory examination, he notes that Plaintiff shows numbness and tingling in the fingers of both hands and states that "her finger symptoms may be due to carpal tunnel syndrome as well as other repetitive motion related neuropathies." However, Dr. Slutsky further notes that Plaintiff had negative Phalen's maneuvers and Tinel's signs.[13]  The ALJ did not reject Plaintiff's subjective complaints outright.  *See Marcus*, 615 F.2d at 27 (noting grounds for reversal where an ALJ rejects a claimant's subjective claims of pain without considering credibility of such claims).  Instead, the ALJ weighed the objective medical evidence in the record and decided to discredit Plaintiff's claims that she did not have normal strength or a normal range of motion.  Tr*.*  at 15.  As such, the court concludes that the ALJ's assessment (related to Plaintiff's diagnoses of neuropathy and carpal tunnel syndrome) is supported by substantial evidence. Therefore, the court denies Plaintiff's motion to reverse the Commissioner's decision on this basis.

---

[12] The court further notes that Plaintiff did not mention these complaints as disabling when asked by the ALJ at the hearing "what are your medical issues and how do they limit you? Why are you disabled?"  Tr. 44.  Plaintiff responds: "I have PTSD. I have anxiety. I have severe depression. I'm bipolar. I have HIV." *Id.* The response omits any indication that Plaintiff is disabled because of hand use limitations arising from her neuropathy and carpal tunnel syndrome.

[13] The Tinel's signs test is "commonly used to diagnose carpal tunnel syndrome. However, the test can also be used to test for other nerve conditions . . . ."  Tinel's sign, Healthline.com, https://www.healthline.com/health/tinels-sign.  The Phalen maneuver also tests for carpal tunnel syndrome. *Id.*

### 2. Off-Task and Distracting Behavior/Insubordination

Plaintiff also argues that the RFC fails to account for her off-task behavior in a work setting, to include her absenteeism. She points to the opinion of state agency reviewer Dr. Susan Uber, Ph.D. ("Dr. Uber"). In her assessment, Dr. Uber finds that Plaintiff "may distract peers on occasion with reactivity and irritability," *id.* at 162, and "her mood cycling and reactivity may on occasion reduce optimal performance and productivity[,]" *id.* at 161.[14] The Commissioner responds that the ALJ included significant limitations in the RFC assessment to account for Plaintiff's mental impairments of bipolar disorder and borderline personality disorder. Mot. to Affirm 11, ECF No. 21-1.

The ALJ's decision includes the following RFC limitations arising from Plaintiff's mental impairments: she can perform simple, routine, and repetitive tasks; she can sustain concentration, persistence, and pace for 2-hour segments; and she can have brief and superficial interaction with workers and the public. Tr. 14. Moreover, the ALJ found that Plaintiff requires work with little to no changes in duties and/or routines, and that she cannot perform work requiring independent judgment (such as setting duties/schedules for others, or being responsible for the safety of others). *Id.*

Despite these limitations, Plaintiff argues that the RFC does not account for her disruptive and insubordinate manner, relying on the vocational expert testimony that a

---

[14] Plaintiff argues that the ALJ failed to follow the appeals council's remand order to further consider Plaintiff's ability to function socially in the workplace. Plaintiff contends that the ALJ's "new decision reflects exactly the same level of consideration of [her] ability to function socially in a workplace." Mot. to Reverse 17, ECF No. 16-1. The ALJ's initial decision states that Plaintiff may have "no more than occasional interaction with coworkers, and only brief and superficial interaction with the public." Tr. 190. On remand, however, the ALJ found that Plaintiff can have only "brief and superficial interaction *with workers and the public*[.]" *Id.* at 14. Thus, the ALJ did reevaluate Plaintiff's ability to function socially in a workplace by placing further restrictions on her interaction with coworkers. Because the ALJ followed the remand instruction, the decision does not warrant further remand for failure to follow the appeals council order.

person who occasionally behaves in a disruptive or insubordinate manner would be unable to work.  *Id.* at 106.  At the hearing, Plaintiff was asked whether she has problems getting along with others.  *Id.* at 50.  Plaintiff responded in the affirmative and stated that she has difficulties getting along with the other individuals who reside in her 15-person home.  *Id.* at 50–51.  While Plaintiff may have trouble getting along with individuals with whom she resides, the record evidence fails to demonstrate that Plaintiff's temperament is so disruptive that she is incapable of the "brief and superficial" workplace interactions noted in the RFC.  Moreover, as described above, Plaintiff's thought process was "Normal" *id.* at 3188, before, during, and after her two hospitalizations in 2019.  The symptoms prior to her hospitalization seemed to follow "medication noncompliance", but she showed "rapid improvement" once she resumed her prescribed medical and psychiatric medication.  *Id.* at 3187.  March 2020 treatment notes indicate that Plaintiff is "overall doing well" and that she "denies sig[nificant] anxiety" and "reports good mood." *Id.* at 3500.  As the Commissioner notes in his brief, it is a claimant's burden to prove a more restrictive RFC.  See *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("[Plaintiff] had a duty to prove a more restrictive RFC, and failed to do so.").  Here, Plaintiff has not shown that the medical history was incomplete or that there were gaps in the administrative record. See *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (*quoting Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)).

As such, the court concludes that the ALJ properly assessed the plaintiff's RFC related to her bipolar disorder and borderline personality disorder.  The court further concludes that the ALJ's assessment related to her mental impairments is supported by

substantial evidence. Therefore, the court denies the plaintiff's motion to reverse the Commissioner's decision on this basis.

## V. CONCLUSION

Plaintiff's motion for an order reversing or remanding the Commissioner's decision (ECF No. 16) is **DENIED** and the Commissioner's motion to affirm that decision (ECF No. 21) is **GRANTED.**

The Clerk of Court respectfully is asked to render judgment in Defendant's favor and to close this case.  Further, if any related social security appeal is filed, the Clerk is asked to please assign it to the undersigned (as the District Judge who issued this ruling).

**IT IS SO ORDERED.**  Entered at Hartford, Connecticut this 27th day of June, 2023.


_____/s/_____
OMAR A. WILLIAMS
United States District Judge